STATE of Missouri, Respondent,

v.

Eddie Lee ROSE, Appellant.

No. 53996.

Supreme Court of Missouri,
Division No. 1.

April 14, 1969.

John C. Danforth, Atty. Gen., B. J. Jones, Asst. Atty. Gen., Jefferson City, for respondent.

James A. Blackwell, St. Charles, for appellant.

WELBORN, Commissioner.

Appeal from denial, after hearing, of motion, under Supreme Court Rule 27.26, V.A.M.R., to set aside judgment of conviction entered on plea of guilty.

By information filed in the St. Charles County Circuit Court on May 24, 1967, Eddie Lee Rose was charged with stealing 26 automobile tires of a value of $115.00. Rose, represented by counsel of his own choice, pleaded not guilty on June 5, 1967. On December 4, 1967, represented by his attorney, Rose changed his plea to guilty. After an examination of the defendant by the court, the punishment was fixed at two years' imprisonment. Sentence was stayed until January 2, 1968, in order to allow investigation of defendant's application for parole. On January 2, a hearing was held on the application. The court denied parole. Rose was committed to the custody of the Department of Corrections.

On March 2, 1968, Rose filed a pro se motion under Rule 27.26, to set aside his conviction. The ground of relief pursued in the trial court and here was that his plea of guilty was involuntary because it was induced and coerced by his attorney, with the assurances that probation would be granted.

A hearing was held at which Rose, represented by counsel appointed for the 27.26 proceeding, testified.

Rose testified that his attorney told him after the preliminary hearing in May, 1967, he had talked to the prosecuting attorney and that that official would recommend a two-year sentence with probation if Rose would plead guilty. Rose stated that he thereafter saw his attorney every law day and on each such occasion the attorney wanted him to plead guilty so he would receive probation. Rose also testified that the attorney told him repeatedly that he could not obtain a fair trial in St. Charles County.

According to Rose, at the October, 1967 law day, the following colloquy occurred:

"Mr. Boggs told me to enter a plea of guilty—that he would guarantee me a parole—that he had made arrangements for me to receive a parole—that he had made arrangements that I would receive a parole— that he had talked to Mr. Farlow, the probation officer and to Mr. Prinster, the Prosecuting Attorney, as well as with the Judge—he had made arrangements with them that I would receive probation—that I wouldn't enter the jail—prison.

\* \* \* \* \* \*

" \* \* \* He said: A man like you with no background, with no prior record, I see no way in the world why you shouldn't make it—I guarantee you you will make it— I promise you that you will make it. He said: If you enter a plea of guilty I guarantee it—I have made arrangements—I have talked to the Judge and the Prosecutor and to Mr. Farlow."

On the date that the plea was entered: "[O]n December 4th I sat there by the bench—right there by the bench just before being called up here—he told me again that he had made arrangements—he wanted me to enter a plea of guilty—that I wouldn't receive a fair trial—that he guaranteed me parole—he definitely promised—he said he guaranteed it."

He stated that his attorney had told him that he had lunch with the parole officer and arranged the parole.

Rose was the only witness at the 27.26 hearing. The trial court noted that, within minutes after the completion of the 27.26 hearing, he had seen the attorney who represented Rose at the time of the plea, in the courthouse.

The trial court found, on the basis of the record at the time of entry of the plea of guilty, that the plea had been entered voluntarily.

"The Court finds that no promise had been made to defendant nor could defendant have reasonably believed he would receive any special consideration for parole for entering a plea of guilty to the charge.

Certainly there was no evidence of the State making any promise to defendant. We have only the defendant's statement that his counsel made a promise which, if true, could not benefit this defendant at this hearing.

"This Court further finds that the defendant has failed in his burden of establishing his grounds for relief as required by Supreme Court Rule 27.26. Having failed to do so, this Court must conclude that his motion should be denied."

 On this appeal, the question before us is "whether the findings, conclusions and judgment of the trial court are clearly erroneous." Rule 27.26(j), V.A. M.R.; State v. Mountjoy, Mo.Sup., 420 S.W.2d 316, 323; Crosswhite v. State, Mo. Sup., 426 S.W.2d 67, 70–71. In this connection, we also note that the burden of establishing the grounds for relief by the preponderance of the evidence was upon the petitioner. Rule 27.26(f), V.A.M.R.

 Appellant challenges the court's conclusion that, as a matter of law, promises of the defendant's counsel could not benefit the defendant. He asserts that the rule frequently expressed in opinions of this court makes the fact of misapprehension the test for determining whether or not a plea of guilty may be withdrawn. The rule has been often stated as follows: "If the defendant should be misled or be induced to plead guilty by fraud or mistake, by misapprehension, fear, persuasion, or the holding out of hopes which prove to be false or ill founded, he should be permitted to withdraw his plea. The law favors a trial on its merits." State v. Cochran, 332 Mo. 742, 60 S.W.2d 1, 2 [5–8]. See also State v. Hovis, 353 Mo. 602, 183 S.W.2d 147, 148 [1, 2]; State v. Williams, Mo. Sup., 361 S.W.2d 772, 775 [3, 4]; State v. Smith, 421 S.W.2d 501, 502.

 Appellant also calls attention to the statement in State v. Dale, 282 Mo. 663, 222 S.W. 763, 764: "It is immaterial whether the misleading was intentionally or unintentionally done. The material inquiry is: Was the defendant misled, or under a misapprehension, at the time he entered his plea of guilty?"

As appellant points out, in laying down these rules, no limitation has been made upon the source of the misapprehension or misleading. Insofar as we have found, cases in which relief has been granted in the state all have involved some activity by a representative of the state which created or contributed to the defendant's misapprehension. In State v. Hovis, 353 Mo. 602, 183 S.W.2d 147, the prosecuting attorney, in conversation with the defendant and members of his family, had held out the hope of parole. In State v. Williams, Mo.Sup., 361 S.W.2d 772, the state withdrew the habitual criminal charge. The court considered that the action could have caused the defendant, who received a death sentence on a plea of guilty, to have been misled as to the possibility of a death sentence on his plea. See also: State v. Stephens, 71 Mo. 535, 536; State v. Dale, 282 Mo. 663, 222 S.W. 763, 764; State v. Hare, 331 Mo. 707, 56 S.W.2d 141; State v. Cochran, 332 Mo. 742, 60 S.W.2d 1, 2; State v. Blatherwick, 238 Mo.App. 1005, 191 S.W.2d 1021, 1024; State v. Edmondson, Mo.Sup., 438 S.W.2d 237; State v. Smith, Mo.Sup., 421 S.W.2d 501.

We have found no case in this state which has considered the precise question here presented. We do find that in other jurisdictions the question has been considered.

In People v. Stillwell, 162 Cal.App.2d 175, 328 P.2d 21, 22 [2–5], the court stated:

"Where the statement by counsel represents that a commitment was made by some responsible state official, coram nobis is not available in the absence of a showing that the representation was apparently corroborated by the acts or statements of the official."

Other California cases to the same effect include People v. Gilbert, 25 Cal.2d 422, 154 P.2d 657, 667–668 [16] [17]; Peo-

ple v. Martinez, 88 Cal.App.2d 767, 199 P. 2d 375, 378 [7]. These cases appear to be based upon the theory that the attorney is the agent of the accused and that the defendant cannot avail himself of even willfully false statements of factual matters by his own attorney. State v. Gilbert, supra. To a similar effect are Smith v. United States, 116 U.S.App.D.C. 404, 324 F. 2d 436, 441 [8]; People v. King, 284 App. Div. 1015, 135 N.Y.S.2d 396, 397 [1–3]; People v. Bofill, 19 Misc.2d 708, 192 N.Y. S.2d 821; People v. Brim, 22 Misc.2d 335, 199 N.Y.S.2d 744, 745–746 [1]; Davidson v. State, 92 Idaho 104, 437 P.2d 620.

On the other hand, in Long v. State, 231 Ind. 59, 106 N.E.2d 692, the court held that an allegation in a coram nobis proceeding to the effect that a plea of guilty was induced by counsel's misrepresentation that a suspended sentence would be granted was sufficient to raise an issue of fact. "This conduct even on the part of h's own attorneys, would amount to a fraud upon appellant, which the trial court should neither allow nor countenance. It is not a sufficient base upon which to found a judgment taking away the right of liberty from a defendant charged with crime." 106 N.E.2d 693 [2].

An exhaustive study of the rules in this area is found in United States ex rel. Thurmond v. Mancusi, 275 F.Supp. 508, D.C.E.D.N.Y. In that case the court stated (275 F.Supp. 516–518):

"If, at the time he pled guilty, the defendant believed that a coercive promise or threat had been made by either the court or the prosecutor, though in fact no such promise or threat had been made, and his plea was induced by this belief, it is an involuntary and void plea. This conclusion necessarily follows from the fact that voluntariness connotes a state of mind of an actor. If the actor—i. e., the defendant—believes that a promise has been made, the effect on his state of mind is exactly the same as if such a promise had in fact been made. Thus, any test of whether a person acts voluntarily is necessarily 'subjective.'

\* \* \* \* \* \*

"A guilty plea induced by a mistaken belief that a binding plea agreement had been made is invalid even if it is the defendant's own attorney who is responsible for the defendant's mistaken belief. Compare United States v. Shneer, 194 F.2d 598 (3d Cir. 1952) (innocent misrepresentation by counsel vitiates plea); United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244, 249 (S. D.N.Y.1966) ('even where no specific promise was made, and a guilty plea was entered as a result of a "grave misunderstanding" solely on the part of defense counsel and not participated in by either the prosecution or the judge, the interests of justice required that defendants be relieved of their pleas and the judgments of conviction vacated'); and 8 Moore's Federal Practice, § 11.05 [4] (1967 Supp.) ('Plea induced by defense counsel's false representations to defendant as to what, if anything, prosecutor promised. Under these facts the plea should be vacated, regardless of the prosecutor's lack of complicity.') with United States ex rel. Wissenfeld v. Wilkins, 281 F.2d 707, 712 (2d Cir. 1960) (defendant 'must be supposed \* \* to be advised, if he has counsel, that such a promise is in no way binding upon the court and ought not to affect the prisoner's judgment in pleading'; but if counsel is privy to state plan to fraudulently induce a plea, constitutional rights are violated). Cf. United States v. Johnson, 269 F.Supp. 767, 769 (S.D.N.Y.1967) (mere opinion of a 'likely sentence' does not support charge of chicanery, trickery, inducement, fraud or overreaching); Note, U.Pa.L.Rev. 865, 890 (1964) (distinguishing between statements by defense counsel of general court practice and specific assurances).

"A clearcut statement by defense counsel that the District Attorney has made a promise, or an ambiguous remark to which the defendant gives the same meaning, has much the same psychological effect on the defendant as a promise by the District

Attorney. The effect may be greater since the defendant is likely to place more trust in his own attorney than in a member of the prosecutor's staff. The statements of an attorney may even support a finding that he acted so improperly that, for constitutional purposes, defendant was denied the right of effective counsel. Cf. United States ex rel. Maselli v. Reincke, 383 F.2d 129 (2d Cir. 1967) (failure of counsel to advise on right of appeal). But cf., United States v. Horton, 334 F.2d 153 (2d Cir. 1964) (statement of attorney's opinion with respect to sentence; questioning by judge on voluntariness; sentence valid).

"It cannot always be assumed that the presence of counsel automatically insures that the defendant has not been misled into pleading guilty. See Blumberg, 'Lawyers with Convictions,' Transaction, July–August, 1967, p. 18, quoted in Kamisar, 'Are the Scales of Justice Evenly Balanced?', New York Law Journal, August 23, 1967, p. 4, col. 1; Trebach, The Rationing of Justice 148 (1964). Recent writings suggest that there are instances where defense counsel have considered their own rather than their clients' interest in disposing of a case by a guilty plea rather than by a long trial. Ibid. Indeed, it would be especially incongruous to impute the knowledge of counsel to his client in cases in which the latter claims that it was his own attorney who misled him.

"There is little merit in the state's contention that a subjective test of what the defendant believed rather than what a district attorney or judge told him is too difficult to apply. The state of a man's mind, like most other issues of fact, is decided on the basis of reasonable inferences drawn from the known surrounding facts and circumstances. See United States ex rel. McGrath v. LaVallee, 319 F.2d 308, 315 (2d Cir. 1963) (concurring and dissenting opinion); United States v. Tateo, 214 F.Supp. 560, 565 (S.D.N.Y.1963). While a prisoner may proclaim that his prior state of mind negated the voluntariness of his plea, if it was unreasonable for him to entertain

such a belief, faith in his veracity will be shattered. '[R]easonableness goes to the credibility of the accused as a matter of evidence.' Williams, Criminal Law; The General Part 202 (2d Ed. 1961).

"Moreover, there are very practical procedural answers to the contention that a subjective test is too difficult to administer. Candor, a full record and a bona fide attempt by the trial court 'to verify that the defendant's plea is the result of an intelligent and knowing choice' should not be overly burdensome. The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts, 13 (1967).

"If the inquiry is made properly in the first instance, there will be no need for extensive post-conviction hearings such as have been required in this case. Such hearings are difficult not only because of the passage of time and attenuation of evidence, but because the court cannot accept at face value the defendant's statement of what was in his mind. At the time the plea is taken, the defendant's statement of why he is pleading can be accepted and acted upon."

■ The reasoning of the court in that case is more sound than that of the cases previously cited, which would not permit a defendant to set aside a plea because he had been misled by his own attorney. As pointed out in Mancusi, a defendant is particularly susceptible to misleading by his own counsel. The practical difficulties which might arise in distinguishing between specific assurances and opinion or speculation based upon general court practice should not preclude a defendant who reasonably relies upon the former from subsequently having his plea set aside.

The rules laid down by this court in prior cases should be given broad enough scope to encompass the complaint urged by appellant here. If the material inquiry is whether or not the defendant was misled, as stated in State v. Dale, supra, and, if, as stated in State v. Cochran, supra, the

policy of the law is to favor a trial on the merits, the limitation which the trial court imposed in this case cannot stand. The limitation is contrary to the spirit of the prior cases and certainly is not in accord with reason. Such limitation should not be engrafted on the rules previously laid down.

Should the trial court's ruling stand, despite the erroneous conclusion of law about the effect of counsel's promises? If the court's findings are to be construed as a determination that no one, including appellant's counsel, made promises which might reasonably have misled appellant, the conclusion about the effect of counsel's promises might well be superfluous. However, there is no such clear conclusion in the court's finding. The original statement that no promises were made is limited by the further finding that the state made no promise. No finding is made about promises by the defendant's own counsel.

Since the amendment of Rule 27.26, effective September 1, 1967, appellate review of a trial court's action in this proceeding is limited to a determination of whether "the findings, conclusions and judgment of the trial court are clearly erroneous." De novo review, formerly prescribed by Rule 28.05, is no longer the process of appellate review. The change in method of appellate review puts particular emphasis upon the requirement that the trial court make findings of fact and conclusions of law. Obviously, the reviewing court may not determine whether or not such findings are clearly erroneous if there is doubt as to the trial court's actual finding.

In view of the primary duty of the trial court to make the basic findings on factual issues, the judgment must be set aside and the cause remanded to the trial court for explicit finding on the factual issues raised by the motion and the evidence. See United States v. Marchese, 341 F.2d 782, 794–795, CCA, 9th Circuit. On remand, it would be proper upon the application of either party to reopen the matter for the presentation of further evidence, particularly the testimony of defendant's former counsel, which might assist in the determination of the issue.

Reversed and remanded.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

SEILER and STORCKMAN, JJ., concur.

HENLEY, P. J., concurs in result.